UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAUDERHILL HOUSING AUTHORITY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 10-1472 (ABJ) ) |
| SHAUN DONOVAN, Secretary of the U.S. Department of Housing and Urban Development, *et al.*, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

In this case, plaintiff Lauderhill Housing Authority ("LHA") asks the Court to intervene in an ongoing administrative process by ordering the U.S. Department of Housing and Urban Development ("HUD") to recognize LHA's sole and exclusive jurisdiction to distribute housing vouchers for the city of Lauderhill, Florida, or at a minimum, to transfer vouchers from other housing authorities that do not contest LHA's jurisdiction. For the reasons set forth below, the Court declines to do so. Therefore, defendants' motion to dismiss [Dkt # 12] will be granted, plaintiff's motion for partial summary judgment [Dkt # 13] will be denied as moot, and defendants' cross motion for partial summary judgment [Dkt # 19] will be denied as moot.

**BACKGROUND**

The Section 8 Program

HUD administers the Section 8 Housing Choice Voucher Program ("Section 8 program" or "the program"), which provides rental assistance in the form of housing vouchers to low income households. Compl. ¶ 7. HUD does not directly issue the vouchers to qualifying

families but distributes them through public housing authorities ("PHAs") located in or near the communities in which the families reside. *Id*. Because Congress wanted to encourage local decision-making about housing policy, PHAs are entities of state and local governments. *See* 42 U.S.C. § 1437a(b)(a6); *see also Baker v. Cincinnati Metro. Hous. Auth.*, 675 F.2d 836, 840 (6th Cir. 1982) ("It is the policy of the United States . . . to vest in public housing agencies the maximum amount of responsibility in the administration of their housing programs.") (internal citations and quotation marks omitted). Under HUD regulations, HUD must defer to state and local law in determining a PHA's jurisdiction to administer vouchers for a particular area. 24 C.F.R. § 982.4(b) (defining jurisdiction under the Section 8 program as "[t]he area in which the PHA has authority under state and local law to administer the program").

To fund the voucher program, HUD enters into a separate agreement with each PHA called an Annual Contributions Contract ("ACC"), which serves as the funding mechanism for the Section 8 program. Compl. ¶¶ 8–9. The ACC sets forth a specific dollar amount that is awarded to a PHA for each voucher they administer. *Id*. ¶ 9.

Under HUD regulations, housing vouchers must be "portable," meaning that a qualifying family must be able to move to another jurisdiction and still be able to use that same voucher. *Id*. ¶ 10; *see also* 24 C.F.R. § 982.355. HUD regulations also authorize the agency to transfer funds from one PHA to another when a family moves to a different PHA's jurisdiction. Compl. ¶ 13; *see* 24 C.F.R. § 982.355(f). Because the regulation uses permissive and not mandatory language, the decision to transfer funds is subject to the agency's discretion. 24 C.F.R. § 982.355(f) ("(1) HUD *may* transfer funds for assistance to portable families . . . (3) HUD *may* provide additional funding (e.g., funds for incremental units) to the receiving PHA for absorption of portable families") (emphasis added).

## The Florida Statute

In Florida, the state legislature established public housing authorities to address the "shortage of safe or sanitary dwelling accommodations available at rents which persons of low income can afford." Fla. Stat. § 421.04(2)(b). Under this statute, the jurisdiction or "area of operation" for housing authorities under state law is defined as:

> (a) [The jurisdiction in] the case of a housing authority of a city having a population of less than 25,000, shall include such city and the area within 5 miles of the territorial boundaries thereof; and
>
> (b) [The jurisdiction in] the case of a housing authority of a city having a population of 25,000 or more shall include such city and the area within 10 miles from the territorial boundaries thereof; provided however, that the area of operation of a housing authority of any city shall not include any area which lies within the territorial boundaries of some other city . . . and further provided that the area of operation shall not extend outside of the boundaries of the county in which the city is located and no housing authority shall have any power or jurisdiction outside of the county in which the city is located.

Fla. Stat. § 421.03(6).

## Lauderhill Housing Authority

Plaintiff Lauderhill Housing Authority ("LHA") is a public housing authority in Lauderhill, Florida, a city in Broward County. Compl. ¶ 1; Ex. 4 to Compl. LHA was established by the Lauderhill City Commission in 2002. Compl. ¶ 20. There are approximately 1,200 rentals under the Section 8 program in Lauderhill. *Id.* ¶ 19. Before 2002, Section 8 vouchers for Lauderhill were administered by other housing authorities located in Broward County. *Id.* ¶ 19.[1]

---

1  The other housing authorities that have administered housing vouchers in Lauderhill include: Broward County Housing Authority ("BCHA"), the Housing Authority of Pompano Beach ("HAPB"), the Housing Authority of the City of Dania ("HACD"), the Housing Authority of the City of Fort Lauderdale ("HACFL"), the Hollywood Housing Authority ("HHA"), the Deerfield Beach Housing Authority ("DBHA") (collectively the "Broward HAs"). Compl. ¶ 19. LHA insists that it is not seeking the transfer of authority so that it can receive the administrative fees associated with such contracts but because it wants to ensure that "all of the Program

LHA claims that during the years before this lawsuit was filed, it "tirelessly pursued" HUD's approval for the program but that HUD never definitively approved or denied the request. *Id*. ¶ 22. The complaint alleges the LHA's lack of an ACC has impeded its ability to participate in other federal assistance programs. *Id*. ¶ 39. Although the timeline is not clearly set forth in the complaint, LHA states generally that it has participated in numerous meetings with HUD officials to discuss the issue and that it has responded promptly to every request for information HUD has made. *Id*.

After its formation in 2002, LHA asked HUD to enter into an ACC and to transfer to it all Section 8 vouchers used within the city of Lauderhill but being administered by neighboring public housing authorities. *Id*. ¶¶ 21–22. The request was based on LHA's contention that it has sole and exclusive jurisdiction for the city of Lauderhill under Fla. Stat. § 421.03(6). *Id*. ¶ 23. HUD responded that there was no "public housing development funding available" at that time and suggested that LHA work with the other PHAs in Broward County "to discuss a local partnership that would enable [LHA] staff to become familiar with HUD regulations and requirements should Section 8 funding become available." A.R. at 1; 3. [2]

In April 2003, after continued conversation between the parties, HUD again told LHA that it could not simply transfer vouchers from one agency to another because of its contractual relationships with existing PHAs. *Id*. at 4. HUD also said that it could not give LHAs any new

---

housing in Lauderhill lives up [to] the safe, sanitary conditions in compliance with LHA's stated purpose." *Id*. ¶ 21.

2   A document outside the complaint may be considered on a motion to dismiss under Rule 12(b)(6) if it is "referred to in the complaint" and is "integral to" the plaintiff's claim. *Kaempe v. Meyers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Because HUD's request that LHA seek an opinion from the Florida Attorney General and LHA's failure to do so is plainly referenced in paragraph 23 of the Complaint, the Court can properly consider this part of the administrative record for purposes of the motion to dismiss.

vouchers that were created because in order to receive those, a PHA must have an existing program and be able to demonstrate "capacity." *Id.* In order to develop capacity, HUD suggested that LHA work as a sub-contractor for an existing agency and apply for disability voucher programs, which do not require PHAs to have an existing program in order to participate. *Id.*

At some point, HUD told LHA that it needed to obtain a public housing authority number before it could participate in the Section 8 program, and LHA procured one in 2007. Compl. ¶ 22. HUD still did not approve LHA's participation in the program, but instead it asked LHA to demonstrate that it had jurisdiction to serve as the PHA for Lauderhill under Florida law. *Id.* ¶ 23.

LHA provided HUD with a copy of the City Council's 2002 resolution establishing it as a public housing authority. It also proffered legal opinions from its counsel and the city attorney for Lauderhill stating that LHA had sole and exclusive jurisdiction for the area pursuant to Fla. Stat. § 421.03(6). *Id.* ¶ 22; *see also* Compl. at Ex. 5. Because PHA jurisdiction is a matter of state and local law, 24 C.F.R. § 982.4(b), in February 2010, HUD sought a legal opinion from the Attorney General of Florida on the issue, but the Attorney General's Office took the position that it would only respond to a request from a Florida entity. Compl. ¶ 23; A.R. at 170–77. HUD first asked that the other PHAs in Broward County seek the opinion from the Attorney General in order to resolve the question, but when none would do so, HUD asked LHA to make the request. Compl. ¶ 23. To date, LHA has declined to do so. *Id.*

Unable to secure a definitive statement from the Attorney General, HUD surveyed the PHAs already operating in Lauderhill to determine if there was any objection to LHA's assertion of exclusive jurisdiction. On July 2, 2010, it sent letters to the Deerfield Beach Housing

5

Authority, the Housing Authority of the City of Ft. Lauderdale, the Dania Beach Housing Authority, the Housing Authority of Pompano Beach, and the Broward County Housing Authority which stated:

> LHA submitted documentation dated October 6, 2009, in the form of a legal opinion and attachments stating that LHA has legal authority to exclusively administer the Housing Choice Voucher Program within the City of Lauderhill . . . . The Attorney General declined to render an opinion on the grounds that the authority of such an opinion would extend only to a request made by an interested party, which in this case would be one or more PHAs located in the state of Florida. Please feel free to communicate any comments or concerns that you may have regarding LHA's interpretation of Florida state law . . . . Absent any legal opinion to the contrary received within the 30-day deadline, HUD will recognize the legal opinion issued by LHA, proceed with its evaluation of LHA's capacity to administer a Section 8 program and render a decision based on that evaluation.

A.R. at 207–16.

At the same time, HUD informed LHA that the letters had been sent and stated: "Should the PHAs neither respond within the established timeframe, nor provide a legal opinion stating that they have authority to also operate in Lauderhill under state law, we will provide you with instructions on demonstrating administrative capacity at that time." A.R. at 206. The Administrative Record reveals that some, but not all, of the PHAs communicated an objection to plaintiff's legal opinion within the specified time period. *See* A.R. at 257–69, opinion letter submitted on behalf of Broward County Housing Authority and Dania Beach Housing Authority on July 29, 2010. HUD viewed this legal opinion as an indication that there is a dispute over the proper interpretation of Fla. Stat. § 421.02 that the Attorney General must resolve before HUD can rule on the exclusivity issue. A.R. at 275.

LHA asserts that it should be permitted to assume control of those vouchers currently administered by PHAs with no objection to its assumption of that role. *See* Compl. ¶ 41. It also

6

alleges that numerous PHAs outside of Broward County have contacted it directly regarding porting a voucher holder into LHA's jurisdiction, but that it cannot initiate this process without an ACC from HUD. *Id*.

On August 24, 2010, HUD addressed these issues in a letter to Kennie Hobbs, Executive Director of LHA:

> LHA has also suggested that HUD immediately enter into an ACC with LHA in order to transfer administration for those HCV participants residing in Lauderhill whose assistance is administered by a PHA that did not respond to HUD's letter . . . . Portability is limited to areas where a PHA that currently administers the HCV program has jurisdiction . . . . Since there are PHAs currently operating voucher programs that claim jurisdiction in Lauderhill, any portability move would be administered by those agencies in accordance with program regulations, as opposed to the LHA. Given LHA's position that only LHA is able to administer vouchers in Lauderhill, HUD would prefer that the question of LHA's exclusive jurisdiction in Lauder be resolved before taking action in this regard.
> 
> ***
> 
> HUD does not enter into an ACC with a PHA unless HUD is also providing funding to the PHA, as the purpose of the ACC is to set forth the responsibilities of HUD and the PHA regarding that funding . . . . (If it were definitively determined by the Florida Attorney General that PHAs with existing programs were operating in an area where they had no legal jurisdiction to operate but there was a PHA without a program that was capable of taking over administration of the vouchers, HUD would transfer a nominal amount of funding from the exiting PHAs to the new PHA in order to address this concern.)

A.R. at 274–76.

HUD also maintains that even if the Attorney General confirms LHA's claimed jurisdiction, LHA would still need to demonstrate its capacity to participate in the program. Motions Hearing Transcript ("Tr.") at 8–9, Sept. 20, 2011.

### The Case Before the Court

LHA instituted this action on August 31, 2010. The core allegation underlying the complaint is that LHA has "sole and exclusive" jurisdiction to administer the Section 8 program in Lauderhill. *See, e.g.*, Compl. ¶ 35 ("HUD is and has been aware of LHA's sole and exclusive

7

jurisdiction over Lauderhill for years and has refused to act.") Defendant's counsel informed the Court at oral argument that HUD does not question plaintiff's general jurisdiction in the City of Lauderhill – only its claim of sole and exclusive jurisdiction under Florida law. Tr. at 47. But it contends that since it is awaiting LHA's further participation in its efforts to clarify the exclusivity issue, there has been no final agency action rejecting LHA's requests, and the complaint should be dismissed. *Id*. at 49-52.

On those grounds, on November 1, 2010, defendants moved to dismiss for lack of jurisdiction, failure to state a claim, and failure to join indispensable parties [Dkt. # 12].[3] LHA filed a motion for partial summary judgment [Dkt. # 13] on November 9, 2010, and defendants filed a cross motion for partial summary judgment [Dkt. # 19] on December 13, 2010. A hearing was held on September 20, 2011.

LHA first submits that the exclusivity question is properly before the Court, and second, that even if it is not, there are separate issues related to the transfer of some vouchers that are ripe for this Court's review.[4] On the first question, the Court agrees with HUD that there has been no

---

3   Defendants move to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim on the same grounds – that there has been no final agency action in this case. Defs.' Mem. at 8–19, 22–30. Dismissal on the grounds of no final agency action under the Administrative Procedure Act ("APA") is properly sought under Rule 12(b)(6) because "the APA grants a cause of action rather than subject matter jurisdiction." *Fund for Animals, Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13, 18 n. 4 (D.C. Cir. 2006). Thus, the Court will consider any arguments the parties made about final agency action under Rule 12(b)(6). Defendants also move to dismiss under Rule 12(b)(7) for failure to join indispensable parties. Because the Court concludes that plaintiff fails to state a claim, it does not reach this alternative ground for dismissal.

4   This alternative theory of relief was not addressed in the briefing on the motion to dismiss or cross motions for summary judgment. But plaintiff advanced the argument at the hearing on the motions, Tr. 13–14, and the Court's subsequent re-reading of the complaint prompted it to call for additional briefing on the narrow question of whether the complaint fairly stated this alternative or secondary basis for relief. [Dkt. # 23].

final agency action on the determination of LHA's exclusive jurisdiction. And, while the Court was sufficiently concerned to invite the parties to submit additional briefing on the second question, it concludes that there are no segregable portions of the complaint challenging final agency decisions on voucher transfers that can independently proceed.

## ANALYSIS

**I.    Standard of Review**

In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949.

9

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 1950, quoting Fed. R. Civ. P. 8(a)(2). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*. at 1949, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## II. LHA's Complaint

The complaint alleges four claims. Count I seeks a declaratory judgment under 22 U.S.C. § 2201 that HUD violated its own regulations and the APA by failing to act in response to LHA's numerous requests to enter into an ACC *or* to transfer vouchers from the Broward PHAs. Compl. ¶¶ 43–54. Although the complaint does not state this expressly, HUD would only be required to transfer the vouchers from the other PHAs if LHA had exclusive jurisdiction for the city of Lauderhill.

Count II seeks a writ of mandamus under 28 U.S.C. § 1361 requiring HUD to consider LHA's request for an ACC. *Id*. ¶¶ 55–61. This claim is premised on the allegation that "LHA is the sole PHA with jurisdiction in Lauderhill." *Id*. ¶ 58.

Count III seeks a writ of mandamus under 28 U.S.C. § 1361 requiring HUD to port or transfer program vouchers to LHA. Compl. ¶¶ 62–71. This claim is premised on the allegation

that "LHA is the housing authority with sole and exclusive jurisdiction in Lauderhill," but that "at a minimum," HUD should port or transfer the program vouchers to LHA from the PHAs that have not challenged LHA's exclusive jurisdiction, namely the Housing Authority of the City of Fort Lauderdale, the Housing Authority of Pompano Beach, Deerfield Beach Housing Authority, and the Delray Beach Housing Authority. *Id.* ¶ 71.

Count IV seeks a declaratory judgment under 22 U.S.C. § 2201 that LHA has sole and exclusive jurisdiction over the City of Lauderhill under Florida law. Compl. ¶¶ 72–76.

The complaint contains numerous references to the claim of exclusive jurisdiction, including an entire section entitled: "LHA's Exclusive Jurisdiction in Lauderhill and Capacity to Administer the Program." Compl. at 12. Other references to the exclusivity claim include:

- "LHA has exclusive and sole jurisdiction over the city limits of Lauderhill as a lawfully created PHA." *Id.* ¶ 20.

- "LHA's counsel provided an opinion letter to HUD, along with supporting Florida Statutes and supporting documentation, which conclusively establish that LHA is the PHA with sole and exclusive jurisdiction in Lauderhill." *Id.* ¶ 22.

- "The City Attorney for Lauderhill likewise submitted to HUD a near-identical legal opinion regarding LHA's exclusive jurisdiction in Lauderhill in November of 2009." *Id.*

- "Yet, [HUD] has ignored its own policy in LHA's case and has not yet recognized LHA's exclusive jurisdiction." *Id.*

- "[HUD] received a single letter from counsel for [other PHAs] claiming that based upon a 1944 Attorney General Opinion and Mississippi Attorney General Opinion, LHA did not have exclusive jurisdiction." *Id.* ¶ 23.

- "[HUD] is now requiring LHA to jump through another hoop and obtain yet another Florida Attorney General opinion certifying LHA's exclusive jurisdiction." *Id.*

- "[I]t is clear not only that LHA has jurisdiction over the City of Lauderhill, but LHA has <u>exclusive</u> jurisdiction over the City of Lauderhill." *Id.* ¶ 28 (emphasis in original).

11

Notwithstanding the obvious fact that the gravamen of plaintiff's complaint is its assertion of sole and exclusive jurisdiction, plaintiff urges the court to construe the complaint as alleging that HUD has failed to act in two ways: not only by failing to recognize LHA's exclusive jurisdiction, but also by refusing to grant LHA's request for an ACC with respect to the vouchers from non-objecting PHAs, an action which would not necessarily depend on a determination of LHA's exclusive jurisdiction.

Thus, the Court set out to analyze the counts to determine whether they all turn on a determination of exclusivity or whether some of them challenge an alleged decision by HUD separate and apart from the exclusivity issue. After closely reviewing the allegations in the complaint and viewing them in the light most favorable to the plaintiff as the non-moving party, the Court will treat the counts in the complaint in the following way:

- Count I and III are based on exclusive jurisdiction *and* the alleged decision by HUD not to enter into an ACC, which is not based on the claim of exclusive jurisdiction. *See, e.g.*, Count I at Compl. ¶ 48 (HUD's failure to act in response to Plaintiff's repeated requests for an ACC *or* to transfer vouchers from the Broward HAs pursuant to portability regulations") (emphasis added); Count III at Compl. ¶¶ 64, 67 ("LHA is the housing authority with sole and exclusive jurisdiction in Lauderhill . . . [HUD] has failed to act with respect to those PHAs that have not challenged LHA's exclusive jurisdiction.").

- Count II and IV turn only on the question of sole and exclusive jurisdiction. *See, e.g*, Count II at Compl. ¶ 58 ("LHA is the sole PHA with jurisdiction in Lauderhill"); Count IV at Compl. ¶ 73 ("LHA seeks a declaratory judgment that it has sole and exclusive jurisdiction as a housing authority over the City of Lauderhill . . .").

### III. Final Agency Action

Plaintiff's suit seeks relief under the APA, which requires a court to set aside final agency action it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). To qualify as final agency action, the action must: (1) "mark the consummation of the agency's decisionmaking process . . . it must not be of a merely tentative or interlocutory nature;" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000) (internal citations and quotation marks omitted). Final agency actions may include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). "Whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006). Failure to satisfy the APA's final agency action requirement warrants dismissal for failure to state a claim for which relief can be granted. *See id.* at 18 n.4; *Am. Forest Res. Council v. Hall*, 533 F. Supp. 2d 84, 94 (D.D.C. 2008).

Defendants contend that there is no final agency action to review because HUD has not yet made a final determination to approve or deny LHA's requests. Defs.' Mem. at 10–11. They state that the administrative process is ongoing and incomplete because the agency is waiting to review an opinion from the Florida Attorney General about LHA's jurisdiction in Lauderhill. *Id*. Once it receives and reviews this information, HUD indicates that it will issue a final decision and that any involvement from the Court before that point "would allow LHA to end-run the legitimate administrative process." *Id*. at 16.

LHA responds that there has been final agency action because HUD's failure to approve LHA's requests to date was a tacit rejection of those requests. Pl.'s Opp. at 11. Alternatively, LHA contends that HUD's inaction constitutes final agency action in the form of a "failure to act" because the agency has failed "to take a discrete agency action that it is required to take." *Id.*; *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004).

The Court is inclined to agree with the notion that six years is a long time for an application such as this to be pending before an agency. It is also inclined to agree that the Florida statute is clear, and that the legal opinion submitted by Broward County in opposition to LHA's submissions ignores the plain language of the statute and premises its conclusion on a strained interpretation of an inapposite 1944 Attorney General opinion. But it finds that since LHA cannot allege the existence of a final agency action for this Court to review, the complaint fails to state a plausible claim for relief under the APA.

### A. The Court cannot conclude that HUD has rejected LHA's position simply because it has not yet accepted it.

LHA's first contention invites the Court to assume that because HUD has not yet approved the pending requests, it has in fact rejected the legal opinions proffered by LHA concerning its jurisdiction and come to the opposite, final conclusion. The complaint does not clearly set out the chronology of what happened in a way that makes it clear how long either party has been waiting for the other to do something. But LHA's suggestion that HUD has actually come to a decision is not a plausible inference that can be drawn from the complaint. In its complaint, LHA specifically avers that HUD sought an opinion of the Attorney General and that because it did not have authority to make such a request, HUD asked all of the PHAs in Broward County to join in a request for an opinion. Compl. ¶ 23. Ultimately, when the other PHAs declined to do so, HUD requested that LHA seek the opinion of the Florida Attorney

General certifying its exclusive jurisdiction. *Id.*; A.R. at 274–75. The complaint also reveals that LHA did not do so and instead filed this litigation. *Id.*; A.R. at 277–79. Whether or not LHA may have grounds for its view that such a step is unnecessary,[5] those circumstances are inconsistent with the inference it asks the Court to draw: that HUD has come to its own conclusion. The more plausible inference is, as HUD urges in its briefs and as the agency materials referenced in the complaint reveal, that the agency is still in the process of making a decision. Def's Mem. at 18. ("HUD has conveyed, repeatedly, that it will take further administrative action if LHA obtains a Florida State Attorney General opinion, particular to the facts of this case, supporting LHA's own legal claim . . . .")

LHA next complains that the administrative process has been "unreasonably delayed" and "inexcusably long." *See, e.g.*, Pl.'s Opp. at 16 ("HUD has failed to act upon its duties for more than six years and such a delay is simply unreasonable under the APA."). But LHA bears part of the blame for this delay because it has resisted HUD's request that it obtain an opinion from the Attorney General to resolve the issue and has decided to rest upon the opinion letters submitted by its own lawyers and the City Attorney for Lauderhill. The parties met on August 11, 2010 to discuss LHA's claim, during which HUD asked LHA to seek the opinion of the Florida Attorney General. A.R. at 274. HUD offered to request that the Attorney General expedite the opinion so that any further delays in resolving the issue could be minimized. *Id*. LHA elected to file this lawsuit instead on August 31, 2010. A.R. at 277–80; [Dkt. # 1]. Given that the parties are in the middle of a legitimate administrative process that has not yet reached its end, HUD's behavior can hardly be characterized as the "consummation of the agency's

---

5  LHA argues in its Brief on Questions Posed by the Court that HUD's decision to request an Attorney General opinion was itself arbitrary and capricious. [Dkt. # 34 at 8.] This is not alleged in the complaint. Moreover, the decision does not constitute final agency action from which legal consequences can flow, so it cannot be reviewed.

decisionmaking process" or as "determin[ing] rights or obligations." *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 483 (2004).

### B. HUD's failure to act on the claim of exclusivity cannot be considered to be final agency action.

LHA's second argument, that HUD's failure to act in and of itself constitutes final agency action that can be reviewed under the APA, requires close consideration, but it is unavailing as well. Plaintiff alleges two separate ways that HUD has failed to act: (1) by not recognizing its "sole and exclusive jurisdiction" as a PHA in Lauderhill; and (2) by not granting LHA an ACC for the vouchers that could be transferred from the non-objecting PHAs. Although all of the counts turn on the exclusivity issue to some degree, the Court has determined that Counts I and III also include allegations that HUD failed in a second way by not giving LHA an ACC for the vouchers from the PHAs that did not object to LHA's jurisdiction.

The Court understands why LHA has asked it to step in and order HUD to stop dragging its feet, but LHA has not made the necessary showing that would give the Court grounds to act. For both of the alleged failures to act, there is no statutory duty that HUD can be ordered to perform, and LHA fails to plausibly allege that HUD's inaction to date has had the same impact as an actual denial.

As the Supreme Court explained in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004): "The only agency action that can be compelled under the APA is action legally required." *Id.*; *see also Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987) ("[Where] an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review."). Furthermore, a plaintiff asserting a failure to act as the basis for an APA claim must show that the inaction is a discrete agency action that is the "functional equivalent" of final agency action. *See Hi-Tech Pharmacal*

*Co., Inc. v. FDA*, 587 F. Supp. 2d 1, 10 (D.D.C. 2008).  Judicial review of a failure to act would only be appropriate "when administrative inaction has the same impact on the rights of the parties as an express denial of relief."  *Id.* (internal citations omitted).

### 1. HUD's inaction has not had the same impact on LHA as an express denial.

HUD argues that it has not taken any action by which LHA's rights or obligations have been determined and that the process so far does not amount to the "consummation of the agency decisionmaking process."  Def.'s Mem at 23–24.  The Court agrees.  The administrative process has not yet had the same effect that an express denial of LHA's request would have if the administrative process were complete.  *See High-Tech Pharmacal Co.*, 587 F. Supp. 2d at 10.  In *High-Tech*, another court in this District determined that the FDA's failure to act on the plaintiff's request for a declaration of market exclusivity for a generic drug did not amount to agency action.  *Id.*  In that case, in order for the FDA to deny High-Tech's request for market exclusivity, the FDA would have to find that High-Tech had forfeited its entitlement to the exclusivity period, which would have "presumably determine[d] the scope of the parties' rights."  *Id.*  The court concluded that the agency's inaction was not final under the APA because rather than clarifying the parties' rights, the agency's failure to act had only "perpetuate[d] unnecessary uncertainty."  *Id.* (citations omitted).

Here, as in the *High-Tech* case, there has not been a determination of LHA's rights to administer housing vouchers that would render it consummated agency action under the APA.  Theoretically, if HUD rejected LHA's request, there would be a clear delineation of the rights – namely, that LHA does not have exclusive authority to administer vouchers for the city of Lauderhill.  HUD's inaction has not resulted in a clear determination of the parties' rights – as it currently stands, it is unclear whether LHA has exclusive jurisdiction or whether it shares

17

jurisdiction with other PHAs in Broward County. Until this question is resolved, HUD cannot take final action on LHA's second request that at a minimum, the vouchers from non-objecting PHAs be ported to LHA. As with the FDA in *High-Tech*, HUD's failure to act has simply perpetuated "unnecessary uncertainty" and does not amount to final agency action. Given that LHA has failed to show the existence of final agency action, LHA has failed to state a plausible claim for relief, and this Court is precluded from judicial review under the APA. 5 U.S.C. § 706(2)(A).

### 2. HUD has not failed to perform a statutory duty.

LHA asks the Court to force HUD to recognize LHA's "sole and exclusive jurisdiction" by "port[ing] or transfer[ing] all of the program vouchers currently in Lauderhill to LHA." Compl. at 22; *see also* Counts II and IV. This request is premised on the claim that LHA has sole and exclusive authority for the City of Lauderhill. But recognizing LHA's claim to exclusivity is not a discrete agency action that HUD is legally required to perform. As authority for the order it seeks, plaintiff relies on 24 C.F.R. § 982.51, which provides that the "PHA must provide evidence, satisfactory to HUD, of its status as a PHA, of its authority to administer the program, and of the PHA jurisdiction . . . [including] enabling legislation and *a supporting legal opinion satisfactory to HUD*." *Id.* (emphasis added). This regulation specifies what the PHA "must" do; it does not impose a requirement on the agency. What HUD is required to do by statute is defer to state and local law in determining a PHA's jurisdiction to administer vouchers for a particular area. 24 C.F.R. § 982.4(b) (defining jurisdiction under the Section 8 program as "[t]he area in which the PHA has authority under state and local law to administer the program"). And the language of the regulation requiring the PHA to submit a legal opinion that is "satisfactory to HUD" accords the agency the discretion to determine whether it has received the

sort of support it was looking for or not. Thus, LHA has not shown that HUD has failed to comply with a clear legal requirement that it transfer authority from the other Broward County housing authorities to it. Rather than creating an affirmative duty to rule in LHA's favor, the regulation cited by LHA calls for the parties to undertake the very administrative process in which they are currently engaged. For this reason, Counts II and IV will be dismissed for lack of final agency action.

### C. The Court Also Lacks Authority Under the APA To Order the Transfer of Vouchers.

LHA has asked the Court in the alternative to compel HUD to enter into an ACC for the vouchers from the housing authorities that do not contest its jurisdiction. *See* Counts I and III. The Court observes that an agreement to do so would seem like a reasonable compromise; receiving an ACC for even a small number of vouchers would allow LHA to pursue other federal assistance programs and receive future transfers. But in its letter to LHA on August 24, 2010, HUD took the position that it could not simply port the vouchers from the non-objecting PHAs because "[p]ortability is limited to areas where a PHA that currently administers the HCV program has jurisdiction." A.R. at 275. HUD also stated that it "would prefer that the question of LHA's exclusive jurisdiction in Lauderhill be resolved" before it determined whether to port the vouchers from the non-objecting PHAs. *Id*. Notwithstanding the merits of either party's position, the first question the Court must resolve is whether there has been final agency action with respect to this request. After carefully reviewing the complaint and the parties' various arguments, it is apparent that no final action has occurred.

Even with respect to the vouchers from the non-objecting PHAs, HUD has consistently told LHA that when jurisdiction is finally established, LHA will still need to demonstrate

"capacity" before it will be eligible to participate in the Section 8 program.[6]  Thus, the process is ongoing, and no final determination has been made.  So, the Court concludes that no final agency has occurred with respect to LHA's second request either.  Moreover, HUD's failure to act cannot be deemed to be final action in this instance because transferring vouchers is not something HUD is legally required to do.  24 C.F.R. § 982.355(f).  Therefore, Counts I and III will be dismissed as well.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [Dkt. # 12] will be granted, plaintiff's motion for partial summary judgment [Dkt. # 13] will be denied as moot, and defendants' cross motion for summary judgment [Dkt. # 19] will be denied as moot.  This case is dismissed without prejudice.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: October 14, 2011

---

6  When HUD solicited the views of the other PHAs, it specifically advised LHA:  "Absent any legal opinion to the contrary received within the 30-day deadline, HUD will recognize the legal opinion issued by LHA, proceed with its evaluation of LHA's capacity to administer a Section 8 program and render a decision based on that evaluation."  A.R. at 207–16; *see also* A.R. at 4, 206.